UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
     :
MARIE BOWMAN,     :
     :
                  Plaintiff,     :     14-CV-5423 (JMF)
     :
           -v-     :     <u>OPINION AND ORDER</u>
     :
MAYGINA REALTY, et al.,     :
     :
                  Defendants.     :
     :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

        Plaintiff Marie Bowman brought this lawsuit against Defendants Maygina Realty LLC, Powell Foods of 104th Street, LLC, and Burger King Corporation, alleging disability discrimination under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*, and state human rights laws due to their alleged failure to ensure that a Burger King restaurant frequented by Plaintiff was accessible to the disabled. On the eve of the deadline for pretrial submissions, the parties settled and later entered a stipulated judgment, awarding $1,000 in compensatory damages to Plaintiff and memorializing Defendants' promise to undertake certain modifications to their premises. (*See* Docket No. 45). Thereafter, Plaintiff and Defendants each filed cross-motions for attorneys' fees. For the following reasons, Defendants' motion is DENIED and Plaintiff's motion is GRANTED in part and DENIED in part.

## BACKGROUND

        Plaintiff filed her complaint on July 18, 2014. (*See* Compl. (Docket No. 1)). In it, she alleged that she had attempted to enter the premises maintained by Defendants — a Burger King restaurant — but was unable to do so because of architectural features that rendered the restaurant inaccessible to disabled individuals. (*See id.* ¶¶ 18-21). She alleged that the Burger

King premises were not in compliance with the ADA, the New York Administrative Code, or the Building Code of the City of New York.  (*See id.* ¶¶ 19-23).  Plaintiff further alleged that she intended to visit the restaurant in the future, if it became fully compliant and accessible.  (*See id.* ¶¶ 29-30).  The Complaint sought injunctive relief — ordering Defendants to bring the restaurant into compliance with the applicable laws — and over $200,000 in compensatory and punitive damages, plus attorneys' fees and costs.  (*See id.* at pp. 18-20).

Over the following months, the parties engaged in settlement discussions.  (*See* Defs.' Mem. Law Supp. Mot. Attorneys' Fees & Costs (Docket No. 47) ("Defs.' Mem.") 3-5; Decl. Aaron Warshaw, Esq. Supp. Defs.' Mot. Attorneys' Fees & Costs (Docket No. 48) ("Warshaw Decl.") ¶¶ 10-12).  On October 2, 2014, Defendants offered Plaintiff $500 in compensatory damages, modifications to the sidewalk and bathroom signs at the restaurant, and "reasonable" fees.  (Warshaw Decl., Ex. G).  Plaintiff rejected the proposal on the ground that it did not provide sufficient accessibility.  (*See* Docket No. 14, at 3).  On November 13, 2014, Plaintiff's counsel communicated a settlement demand of $150,000 in compensatory damages and various modifications to Defendants' premises and operating policies and procedures.  (Warshaw Decl., Ex. I, at 2).  Defendants rejected that proposal, and on December 15, 2014, served on Plaintiff an offer of judgment pursuant to Rule 68 of the Federal Rules of Civil Procedure.  (*Id.*, Ex. K).  The offer provided $1,000 "as full and complete judgment on all pending claims brought by Plaintiff against Defendants . . . inclusive of all damages, losses, interests and costs incurred by Plaintiff to date," but exclusive of attorneys' fees.  (*Id.*).  Plaintiff did not respond to the offer (*see id.* ¶ 20), and thereby rejected it.  *See* Fed. R. Civ. P. 68(b) ("An unaccepted offer is considered withdrawn . . . .").  On December 24, 2014, her counsel transmitted a new settlement demand, for $198,612 plus modifications to "correct all accessibility violations" and enhance the

2

restaurant's policies and procedures regarding disability accommodation.  (*See id.*, Ex. M).  Defendants rejected that demand as well.

Discovery proceeded, as did settlement negotiations, in part under the supervision of the assigned Magistrate Judge.  (*See* Defs.' Mem. 7-9).  Following a handful of discovery disputes and an extension of the discovery deadline — due in part to Plaintiff's counsel's representation that Plaintiff was bed-ridden and unable to be deposed — the Court set a deadline of June 2, 2015, for pretrial submissions.  (*See* Docket No. 42).  On that date, however, Plaintiff filed a notice of settlement and proposed order of dismissal, which the Court endorsed the next day.  (*See* Docket Nos. 43, 44).  On November 5, 2015, the Court entered a stipulated judgment.  (*See* Docket No. 45).  That Judgment memorialized modifications Defendants had already made to the restaurant, indicated further modifications Defendants agreed to make, and provided for $1,000 to be paid to Plaintiff.  (*Id.*).  The Judgment stated that "[t]he Court shall retain jurisdiction to make any further orders that may be necessary to carry out" the Judgment, and was so-ordered by the Court.  (*Id.*).  Following entry of the Judgment, each side moved for an award of attorneys' fees and costs.  (*See* Docket Nos. 46, 49).[1]  The Court will address each motion in turn.

## DEFENDANTS' MOTION

Although Defendants' allegations concerning the conduct of Plaintiff's counsel give the Court some pause, there is no basis to award them fees or costs.  Defendants rely first on Rule

---

[1] This Court retains ancillary jurisdiction to adjudicate these motions, as they relate to the underlying litigation.  *See, e.g.*, *In re Austrian & German Bank Holocaust Litig.*, 317 F.3d 91, 98 (2d Cir. 2003) ("Whenever a district court has federal jurisdiction over a case, it retains ancillary jurisdiction after dismissal to adjudicate collateral matters such as attorney's fees."); *Chesley v. Union Carbide Corp.*, 927 F.2d 60, 65 (2d Cir. 1991) (noting that district courts retain ancillary jurisdiction to resolve fee disputes even when a case has settled or been voluntarily dismissed and collecting cases).

3

68, which provides that, when a party rejects an offer pursuant to the Rule — as Plaintiff did here — "[i]f the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." Fed. R. Civ. P. 68(d). By its terms, therefore, a party is entitled to costs pursuant to the Rule only if the final judgment is "not more favorable than the unaccepted offer." Here, that condition was not met, as the Second Circuit has made clear that injunctive relief must be counted in the calculus. *See Reiter v. MTA N.Y.C. Transit Auth.*, 457 F.3d 224, 231 (2d Cir. 2006); *see also id.* at 229 (holding that the magistrate judge below abused his discretion by ruling that equitable relief, including reinstatement of the plaintiff's job, did not have a value of more than $10,001). Defendants' December 2015 offer of judgment was for $1,000 and no more; by contrast, the Judgment entered on November 5, 2015, included both $1,000 *and* a promise — backed by the Court's continuing jurisdiction — that Defendants had made, and would continue to make, modifications to the restaurant. (*Compare* Warshaw Decl., Ex. K, *with* Docket No. 45). The Court is compelled to conclude that that injunctive relief had *some* value, which means that the final judgment was "more favorable" than the offer of judgment and Rule 68 provides Defendants no basis for relief.

In the alternative, Defendants contend that they are entitled to fees and costs pursuant to Title 28, United States Code, Section 1927. That Section provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." An award under the statute "is proper when the attorney's actions are *so completely without merit* as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 71, 79 (2d Cir. 2000) (internal quotation marks omitted). Measured against that high standard, Defendants'

application falls short. To be sure, there is reason to conclude that Plaintiff and her counsel made unreasonable settlement demands, which extended the life of the litigation. But given the modifications that Defendants made to the restaurant (*see* Docket No. 45), the Court cannot conclude that Plaintiff's claims and settlement posture were so completely without merit that they must have been undertaken for some improper purpose. There is also reason to believe that Plaintiff's counsel was less than forthcoming — with defense counsel and the Court — about Plaintiff's medical condition and ability to leave her apartment later in the litigation. (*See* Defs.' Mem. 10-12; Defs.' Reply Mem. Law Further Supp. Mot. Attorneys' Fees & Costs (Docket No. 58) 6-7). But there is no suggestion that she lacked the ability to leave her apartment when the lawsuit was filed, and Defendants fail to demonstrate that Plaintiff could not have recovered, let alone that Plaintiff's counsel knew that and proceeded anyway. In short, although the conduct of Plaintiff's counsel may not have been ideal, it was not so unreasonable as to meet the standard of Section 1927. Accordingly, Defendants' motion for fees and costs is DENIED.

## PLAINTIFF'S MOTION

The Court turns, then, to Plaintiff's motion for fees and costs. Under the ADA, courts have discretion to award "reasonable" attorney's fees and costs to a "prevailing party." 42 U.S.C. § 12205. The Second Circuit has held that "in order to be considered a 'prevailing party' . . . , a plaintiff must not only achieve some 'material alteration of the legal relationship of the parties,' but that change must also be judicially sanctioned." *Roberson v. Giuliani*, 346 F.3d 75, 79 (2d Cir. 2003) (citing *N.Y. State Fed'n of Taxi Drivers, Inc. v. Westchester Cty. Taxi & Limousine Comm'n*, 272 F.3d 154 (2d Cir. 2001)); *see also Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 600 (2001)). Fee awards are calculated by "multiplying a reasonable hourly rate by the number of reasonably expended hours." *Bergerson v. N.Y. State Office of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 289

(2d Cir. 2011). That hourly rate is based, in turn, on "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Id.* at 289 (internal quotation marks omitted). Rates are determined based on the market in the "district in which the reviewing court sits." *Id.* at 290 (internal quotation marks omitted). Courts use contemporaneous time records indicating the number of hours expended and the nature of the work done to determine the reasonable hours expended. *See Lewis v. Coughlin*, 801 F.2d 570, 577 (2d Cir. 1986). But courts have discretion to cut individual entries, or to deduct a reasonable percentage overall "as a practical means of trimming fat from a fee application." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (internal quotation marks omitted). "In ADA litigation, a court may award legal costs to a prevailing party including costs for experts." *Kreisler v. Second Ave. Diner Corp.*, No. 10-CV-7592 (RJS), 2013 WL 3965247, at *2 (S.D.N.Y. July 31, 2013).

As a threshold matter, the parties dispute whether or not Plaintiff is a "prevailing party" for purposes of the ADA. (*See* Pl.'s Mem. Law Supp. Mot. Attorneys' Fees, Costs, & Expenses (Docket No. 51) ("Pl.'s Mem.") 4-9; Defs.' Response Mem. Law Opp'n Pl.'s Mot. (Docket No. 54) ("Defs.' Opp'n") 9-13). The Court finds that she is. The Judgment entered on November 5, 2015, was not only signed by the Court, but also expressly provided that the Court would maintain jurisdiction to ensure that its terms were carried out. (*See* Docket No. 45). That gives the Judgment a "sufficient judicial imprimatur" to make Plaintiff a prevailing party under the governing precedent. *See Roberson*, 346 F.3d at 81-82 (holding that a "district court's retention of jurisdiction . . . is not significantly different from a consent decree and entails a level of judicial sanction sufficient to support an award of attorney's fees"). Furthermore, the Judgment both memorialized Defendants' promise to make modifications to the restaurant and granted a damages award to Plaintiff; the combination is undoubtedly enough of a "material alteration of

6

the legal relationship of the parties . . . to permit an award of attorney's fees." *Buckhannon*, 532 U.S. at 604 (internal quotation marks omitted).  Defendants' protestation that their modifications were "voluntary" and therefore cannot be considered a victory for the Plaintiff are without merit. (*See* Defs.' Opp'n 10-12).  The modifications were an integral part of a Court-endorsed and -enforced Judgment, and were brought about by Plaintiff's filing of this lawsuit in the first place. They were neither so collateral nor so voluntary that they cannot be credited at least in part to Plaintiff's case.

That does not end the analysis, however, because attorney's fees are awarded at the discretion of the Court and must be reasonable.  Here, Plaintiff asks for $188,370 in attorney's fees, at a rate of $600 per hour for approximately 320 hours, plus a 1.5 multiplier.  (*See* Pl.'s Mem. 9-15; Decl. Supp. Mot. Attorneys' Fees, Costs, & Expenses (Docket No. 50) ("Parker Decl.") 8; *id.*, Ex. A).  Plaintiff asks for an additional $54,180 for the 90 hours of work performed on these motions for attorney's fees.  (*See* Reply Decl. Supp. Mot. Attorney's Fees, Costs, & Expenses (Docket No. 55), Ex. G).  These are patently unreasonable requests for several reasons.  First, 320 hours is simply too much time (and $188,000 is simply too much money) for a straightforward case where the pleadings were largely cut and pasted from other cases.  Those figures are particularly jarring when compared to the $40,491.50 that Defendants seek for approximately 150 hours of work billed at $275 an hour.  (*See* Warshaw Decl., Ex. X; Defs.' Mem. 24).  On top of that, Plaintiff's counsel's claim that it took ninety hours — almost one third of the time it allegedly took to litigate the entire case prior to settlement — to handle these two, relatively straightforward fee motions strains credulity, and casts doubt on Plaintiff's fee requests as a whole.  *See, e.g.*, *Jennette v. City of N.Y.*, 800 F. Supp. 1165, 1171 (S.D.N.Y. 1992) (finding that 50 hours to prepare a fee application was unreasonable).  Plaintiff is also not entitled to reimbursement for ministerial acts, unreasonable settlement demands, or time spent on

pretrial submissions (such as witness affidavits or the joint pretrial statement), given that Plaintiff abruptly settled her claims on the eve of trial and could have avoided the significant expense of trial preparations by making a reasonable settlement demand earlier. *See, e.g.*, *Smith v. Wettenstin*, No. 02-CV-5806 (MHD), 2003 WL 22966281, at *5 (S.D.N.Y. Dec. 16, 2003) (reducing hours spent on travel, ministerial tasks, and excessive time spent on substantive work). Put simply, whether it is a question of competence, time management, or worse, Plaintiff's request vastly exceeds what would qualify as "reasonable" for a case of this sort. It follows as well that Plaintiff is not entitled to any sort of multiplier, as this case was neither that risky nor that complex. *See, e.g.*, *Reid v. New York*, 584 F. Supp. 461, 462 (S.D.N.Y. 1984) (rejecting counsel's request for a multiplier because "the relative ease in obtaining judgment, the lack of complex legal issues involved, and the skill and time required in this case are factors which suggest that a multiplier would be inappropriate").

Second, $600 an hour is an unreasonably high rate for a pedestrian and boilerplate disability discrimination case such as this. In *Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281 (E.D.N.Y. 2012), Judge Gleeson found that $200 per hour was an appropriate rate for a disability-rights litigator with only a year or two of civil rights litigation experience. 852 F. Supp. 2d at 300-302.[2] Robert Hanski indicates that he developed his civil rights practice beginning only in 2014 — the year this lawsuit was filed. (*See* Decl. Supp. Mot. Attorneys' Fees, Costs, & Expenses (Docket No. 52) ¶ 11). Taking into account the factors and precedent considered by Judge Gleeson, the Court therefore finds that $200 an hour is an appropriate rate for his services. Glen Parker has somewhat more experience, having begun a plaintiffs'-side civil rights practice in October 2012. (*See* Parker Decl. ¶ 14). The Court therefore finds that

---

[2] Interestingly, the attorney in *Hugee* was Adam Hanski, who also appeared as counsel in this case but did not submit any billing records.

8

$300 is an appropriate hourly rate for his services.  *See, e.g.*, *Shabazz v. City of N.Y.*, No. 14-CV-6417 (GHW), 2015 WL 7779267, at *3 (S.D.N.Y. Dec. 2, 2015) (finding that a rate of $350 per hour was reasonable for an attorney with approximately *five* years of experience in civil rights litigation and noting that "[c]ourts in this district have generally determined that the range of appropriate fees for *experienced* civil rights litigators is between $350 and $450 per hour" (emphasis added)); *Dancy v. McGinley*, 141 F. Supp. 3d 231, 238 (S.D.N.Y. 2015) ("While it seems clear that, for experienced attorneys, hourly rates of $300-400 are unremarkable in civil rights cases in the Southern District, some courts find that awards exceeding $400 per hour are only warranted in unusually difficult and complex cases." (internal quotation marks omitted)); *Wong v. Hunda Glass Corp.*, No. 09-CV-4402 (RLE), 2010 WL 3452417, at *3 (S.D.N.Y. Sept. 1, 2010) ("[T]he range of fees in this District for civil rights and employment law litigators with approximately ten years' experience is between $250 per hour and $350 per hour.").

Finally, although the final Judgment was technically more favorable than the Rule 68 offer made in December 2014, it was not much more so: The amount of compensatory damages was the same and the only additional relief obtained were several modifications (and not especially significant modifications at that) to the restaurant.  That relief pales in comparison to the $150,000 and $198,612 in compensatory damages and the far more extensive injunctive relief that Plaintiff initially demanded in settlement talks, not to mention the $200,000 in damages she sought in her Complaint.  That is, although Plaintiff technically qualifies as a "prevailing party," she was not particularly successful in obtaining the relief she originally sought, which militates against a large award of attorney's fees.  *See Barfield v. N.Y. City Health & Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) ("[T]he most critical factor in a district court's determination of what constitutes reasonable attorney's fees in a given case is the degree of success obtained by the plaintiff." (internal quotation marks omitted)).  Put simply, Plaintiff's fee

9

request in this run-of-the-mill accessibility case is "patently unreasonable, reflecting time expenditures far greater than necessary to prosecute this case generally and the claims on which Plaintiff prevailed in particular." *Marchuk v. Faruqi & Faruqi LLP*, 104 F. Supp. 3d 363, 367 (S.D.N.Y. 2015).

Adjusting for the foregoing, the Court finds that, for the pre-judgment portion of this case, Plaintiff's counsel is entitled to $28,296 in attorney's fees, plus $1,531.20 in costs. That represents two-thirds of the hours Plaintiff's counsel submitted for work done prior to pretrial submissions, minus ministerial tasks and travel time, multiplied by the hourly rates set forth above. The two-thirds reduction is applied in light of the fact that many of the hours spent on run-of-the-mill tasks appear excessive — for example, 0.2 hours to review a simple Magistrate Judge referral order, or 0.3 hours to prepare a letter motion to request an adjournment — and to account for the time spent on unreasonable settlement demands. Accordingly, the Court calculated a total of 107.6 hours for Parker and 53.1 hours for Hanski, reduced to 71 and 35 hours, respectively. In addition, the Court awards Plaintiff $5,000 in attorney's fees for the preparation of the fee application and litigation of the instant motions, which is the product of multiplying twenty hours (the amount of the time the Court deems it would have been reasonable to devote to the fee application and two motions) times $250 (the average of Parker and Hanksi's reasonable billing rates). *See, e.g.*, *Ret. Plan of Unite Here Nat'l Ret. Fund v. Kombassan Holding A.S.*, No. 06-CV-5861 (JSR), 2011 WL 5579033, at *2 (S.D.N.Y. Nov. 15, 2011) (finding that ten hours, rather than 55.5, was a reasonable amount of time to bill for a fee application); *Moon v. Gab Kwon*, No. 99-CV-11810 (GEL), 2002 WL 31512816, at *4 (S.D.N.Y. Nov. 8, 2002) (finding that 32.84 hours was a reasonable amount of time for a fee application in a case with 358.64 total legal hours); *Jennette*, 800 F. Supp. at 1171 (finding that twenty-five hours was a reasonable amount of time for a fee application).

10

## CONCLUSION

For the foregoing reasons, Defendants' motion for fees and costs is DENIED, and Plaintiff's motion is DENIED in part and GRANTED in part. Specifically, Plaintiff's counsel is awarded $33,296 in attorney's fees and $1,531.20 in costs, to be paid by Defendants. The Court awards even this amount with some reluctance, given Plaintiff's unreasonable demands throughout this litigation (which, given Defendants' openness to settlement from the get go, should have been an easy case to resolve), not to mention the high likelihood that counsel misrepresented Plaintiff's condition to Defendants and to this Court. In the final analysis, the Court finds that awarding that amount of fees and costs, but no more, is appropriate in light of the policies behind the fee-shifting provisions of the civil rights laws. To award anything close to the fees Plaintiff seeks, however, would be to countenance and incentivize conduct and practices that are, quite simply, unreasonable.

The Clerk of Court is directed to terminate Docket Nos. 46 and 49.

SO ORDERED.

Date: July 6, 2016
New York, New York

JESSE M. FURMAN
United States District Judge